JACQUELINE MCCALL,

        **Plaintiff,**

v.                                   **Case No: 6:18-cv-1670-Orl-22DCI**

BRIGHT HOUSE NETWORKS, LLC,

        **Defendant.**

---

## ORDER

This cause comes before the Court on Bright House Networks LLC's ("Bright House") Motion for Summary Judgment. (Doc. 18). Plaintiff filed a Response in Opposition. (Doc. 23). For the foregoing reasons, Bright House's Motion will be granted.

## I.      BACKGROUND

Plaintiff's Complaint asserts claims of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act ("FCRA").[1] Plaintiff worked for Bright House from September 2002 until her termination in February 2016, at which time she was sixty-two years old. (Doc. 1 at 2). Plaintiff asserts that throughout her employment, she was subjected to age-related comments from Bright House's senior management team. (*Id.* at 2-3). Specifically, Plaintiff alleged in her deposition that one of Bright House's supervisors, Dan DiFiore, stated: "Our numbers aren't where they can be. We need to get their old [asses] out of here." (Doc. 19-1 at 35). Plaintiff did not point to any other specific comments made by Mr. DiFiore in her deposition and alleged he made the comment sometime in 2014. (*Id.* at 36).

---

[1] Age discrimination claims brought under the FCRA have been considered within the same framework used to decide actions brought pursuant to the ADEA. *See Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1455 n. 2 (11th Cir. 1997). Thus, the Court will combine the claims into one analysis.

Plaintiff alleged that based on this age discrimination, Bright House created a pretextual version of events to terminate her employment. (Doc. 1 at 2-3).

On February 2, 2016, after her return from jury duty, Plaintiff was told that she was under investigation by Bright House's Human Resources department ("HR") based on emails sent from three of Plaintiff's coworkers describing her as demeaning, intimidating, offensive, and creating a hostile work environment. (Doc. 18 at 5). Two of Bright House's supervisors put Plaintiff on a paid leave while the supervisors and the HR department investigated the allegations in the emails. (*Id*. at 7). On February 16, 2016, Bright House notified Plaintiff of her termination. (*Id*.).

Plaintiff's claims assert that but-for her age she would not have been terminated. (Doc. 1 at 3). Plaintiff requests under the ADEA and FCRA compensatory and punitive damages and a declaratory judgment action regarding the violation. (*Id*. at 5). Bright House alleges in response, and in support of its termination, that Plaintiff had negative evaluations regarding her communication as well as negative interactions with coworkers and management. (Doc. 18 at 2-3). Bright House also points to its workplace code of conduct which prohibits harassment, "both overt and subtle" as a form of "employee misconduct that is demeaning to another person." (Doc. 19-2 at 2).

## II.    LEGAL STANDARD

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The interpretation of an insurance contract is a question of law which is appropriate for disposition on summary judgment. *Talat Enterprises, Inc. v. Aetna Life & Cas. Co.*, 952 F.Supp. 773, 776 (M.D. Fla. 1996). It is the movant who bears the initial burden of "identifying for the district court those portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d

1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, modified on other grounds, 30 F.3d 1347 (11th Cir. 1994)). In a case in which the non-movant bears the burden of proof at trial, the movant may carry its initial burden by either negating an essential element of the non-movant's case or by demonstrating the absence of evidence to prove a fact necessary to the non-movant's case. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993) (citation omitted). Once the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating an issue of material fact. *Id*. at 1116. If the movant demonstrates the absence of evidence on a material fact for which the non-movant bears the burden of proof, then the non-movant must either show that the record contains evidence that the movant "overlooked or ignored" or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id*. at 1116–17 (citation omitted). The non-movant must provide more than a "mere scintilla of evidence" supporting its position, and "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." (citation omitted). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead [will] accept [the non-moving party's] version of the facts drawing all justifiable inferences in [the non-movant's] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). Notwithstanding this inference, "[t]here is [still] no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349.

# III.   ANALYSIS

*A.  ADEA Framework*

The ADEA prohibits an employer from discriminating against any employee regarding compensation, terms of employment, or privileges "because of such individual's age," if the employee is at least 40 years of age. 29 U.S.C. §§ 623(a)(1), 631(a). In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009), the Supreme Court held that the language "because of" in the ADEA requires a plaintiff to prove that discrimination was the "but-for" cause of the adverse employment action. *See id.* (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome") (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993)). A prima facie case of age discrimination can be made out in at least three ways:

> First, a plaintiff may produce evidence proving all prongs of the test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973) and *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir. 1977) . . . Second, a plaintiff can make out a prima facie case by direct evidence of discriminatory intent. Third, a prima facie case may be established by statistical proof of a pattern of discrimination.[2]

*Buckley v. Hosp. Corp. of Am.*, 758 F.2d 1525, 1529 (11th Cir. 1985).

A plaintiff can demonstrate direct evidence of discriminatory intent by providing evidence which, if believed, would "prove the existence of a fact without inference or presumption." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 n. 13 (11th Cir. 1988). The ADEA requires that there be direct evidence that age was the reason the employer acted. *Gross*, 129 S.Ct. at 2350.

More often, a plaintiff presents circumstantial evidence of age discrimination. Courts evaluate claims involving circumstantial evidence under the burden-shifting framework set forth

---

[2] This case does not present any statistical proof of a pattern of discrimination.

in *McDonnell Douglas*. 411 U.S. at 802. Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Chapman*, 229 F.3d at 1024. To make out a prima facie case of age discrimination, a plaintiff must show (1) "that she was a member of the protected group of persons between the ages of forty and seventy"; (2) "that she was subject to adverse employment action"; (3) "that a substantially younger person filled the position that she sought or from which she was discharged"; and (4) "that she was qualified to do the job for which she was rejected." *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (2012).[3]

Next, the defendant must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If the defendant articulates one or more such reasons, the plaintiff is afforded an opportunity to show that the employer's stated reason is pretext for discrimination. *See Kragor*, 702 F.3d at 1307 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Because the burden is one of production, not persuasion, the defendant meets its burden by presenting evidence that "raises a genuine issue of fact as to whether" the legitimate, non-discriminatory reason was the true reason for the adverse employment action. *Kragor*, 702 F.3d at 1308.

*B. Direct Evidence*

Plaintiff alleges, and Bright House disputes, that there is direct evidence of age discrimination which led to Plaintiff's termination. Bright House argues that the evidence is circumstantial.

A plaintiff may establish a prima facie case of age discrimination by providing direct evidence of defendant's discriminatory intent. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). This is a rigorous standard. *Id.* Direct evidence of discrimination reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the

---

[3] This test is discussed in further detail, *infra*.

employee." *Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age . . . constitute direct evidence of discrimination." *Id*.

In an ADEA case, the burden of persuasion always remains on the plaintiff to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action. *See Gross*, 557 U.S. at 173. Plaintiff claimed the following is direct evidence that she was improperly terminated based on her age: discriminatory remark by Dan DiFiore that "our numbers aren't where they can be. We need to get their old [asses] out of here" (Doc. 19-1 at 35); and remarks by another director[4] that leadership needed to "get older employees out of here." (Doc. 23 at 5-6). In support, Plaintiff presented affidavits from two coworkers. One stated that they witnessed Mr. DiFiore making "public, discriminatory remarks against older employees" in work-related meetings. (Doc. 24-12 at 2). The other attested that Mr. DiFiore made comments that "the older employees are not keeping up" and that the company needed to "get these old people out of here." (Doc. 24-13 at 2).

Bright House disputes that such evidence is direct or that it proves that age was the but-for cause of Plaintiff's termination. Bright House argues that Mr. DiFiore's comments are not probative because they were too far removed from the decision to terminate Plaintiff.

The Eleventh Circuit has found that comments refusing to hire "old" applicants could be considered direct evidence of discrimination. *See Van Voorhis*, 512 F.3d at 1299 (holding that a statement from a county official who "didn't want to hire any old pilots" was direct evidence of discrimination); *see also Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1205 (11th Cir. 2010) (vacating a judgment of a district court grant of summary judgment in favor of an employer

---

[4] Plaintiff alleges that department director Susan Bonsor also made repeated remarks about older employees. Bonsor left Bright House well before Plaintiff's termination in May 2014. (Doc. 18 at 12).

based on comments that an employee was "too old"); *Lindsey v. Am. Cast Iron Pipe Co.*, 772 F.2d 799, 802 (11th Cir. 1985) (holding that testimony that a company "wanted a younger person to fill the position" . . . constituted "sufficient direct evidence").

However, in the cited cases, the comments were made much closer in time to the adverse employment action. In *Van Voorhis*, the age related comment was made in direct connection with the hiring process. 512 F.3d at 1298; *accord Lindsey*, 772 F.2d at 802. In *Mora*, the supervisor called the plaintiff into their office to be terminated and told her that the company needed someone younger who could be paid less. 597 F.3d at 1203. A second employee also heard the supervisor say to the plaintiff that she was "very old" in the same termination meeting. *Id*. Plaintiff relies on this case in arguing that Bright House's motion must fail due to the existence of similar direct evidence in her case. But the plaintiff in *Mora* had direct evidence of age discrimination because the discriminatory comments were made during her termination. *Id*.

Further, remarks "unrelated to the decision-making process itself are not direct evidence of discrimination. *Barsorian v. Grossman Roth, P.A.*, 572 F. App'x 864, 868 (11th Cir. 2014)[5] (citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). As an analogy to similar cases, the Eleventh Circuit has found that a five-month lapse between a protected employment activity and retaliation under Title VII and the ADEA was too attenuated to establish causation. *Bailey v. City of Huntsville*, 517 F. App'x 857, 861 (11th Cir. 2013). Here, the comment allegedly made by Mr. DiFiore, specifically that "[o]ur numbers aren't where they can be. We need to get their old [asses] out of here," was made, according to Plaintiff, as far back as 2014 and did not specifically relate to her. (Doc. 19-1 at 35-36). Although the declarations of Plaintiff's coworkers[6]

---

[5] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[6] Plaintiff submitted affidavits of coworkers Kimberly Wright-Smith and Stephen Jenkins. (Docs. 24-12, 24-13).

state that they witnessed Mr. DiFiore make the discriminatory remarks during the 2015-2016 calendar year, they do not provide a specific connection to Plaintiff or allege that the comments occurred during or immediately prior to Plaintiff's termination.

Plaintiff cites *Jones v. Bessemer Carraway Med. Ctr.* in arguing that Mr. DiFiore's comments can serve as evidence of pretext. 151 F.3d 1321, 1323 (11th Cir. 1998). The same case, however, held that racially motivated comments were not sufficient direct evidence of discrimination in the plaintiff's termination because "they were not associated with the events of the day leading to Plaintiff's discharge." *Jones*, 151 F.3d at 1323. In *Jones*, the court noted that the day the plaintiff was fired, she was out of uniform and disobedient, which had nothing to do with the past discriminatory comments. *Id*. Here, similarly, the events leading to Plaintiff's termination, *i.e.*, her alleged creation of a hostile work environment, were separated in time and context from her termination and any comments made by Mr. DiFiore.

Plaintiff also relies on *Carter v. City of Miami* for the proposition that direct evidence includes blatant remarks whose intent could be nothing other than to discriminate on the basis of age. 870 F.2d 578, 582 (11th Cir. 1989). That case, however, held that a comment referring to a "little old Jewish lady" was not sufficient direct evidence of discrimination because, while it was inappropriate and condescending, it was not directed at the plaintiff. *Id*. Similarly, here, the comment by Mr. DiFiore that the older employees were not keeping up and their numbers were not what they could be was not directly related to Plaintiff or her performance.

Plaintiff also cites to *Buckley* as a case that did find direct evidence of age discrimination. 758 F.2d at 1530. There, a supervisor's comments at the surprise of the longevity of the staff members as well as comments that the hospital needed "new blood" was direct enough for a reasonable jury to conclude that the defendants acted with discriminatory intent. *Id*. The appellate court reversed the district court's decision to take away credibility determinations from the jury by

directing verdict in favor of the employer. *Id.* at 1528. The court pointed to an incident in which the plaintiff, a nurse, was retrieving medicine from a pharmacy and threw down a vial of medication, yelling and cursing at another employee in front of witnesses. *Id.* The plaintiff, however, alleged that she did not throw down the medicine, use an angry tone, or curse. Additionally, after being put on a brief leave of absence, the plaintiff was called into another supervisor's office, where she was asked if she "thought it was time to retire and enjoy life with her family." *Id.* After her return, the plaintiff was asked to step down from her position and to take a lesser position. *Id.* at 1529. The court noted that a jury could have believed either the witnesses or the plaintiff; therefore, taking this credibility determination away from the jury was an error. *Id.*

*Buckley*, however, is distinguishable. The comments about age were made by the same supervisor who decided to have the plaintiff step down, while the discriminatory comments here were made by only one coworker, Mr. DiFiore, who was not the final decisionmaker. *Id.* Further, unlike in *Buckley*, Plaintiff's termination was reviewed and approved by multiple Bright House employees, including HR professionals. *Id.* As Ms. Barrett noted in her deposition, the process of firing a supervisor like Plaintiff would have typically involved a partnership between the HR department and Bright House's legal department. (Doc. 28-1 at 3). Decisions in similar ADEA cases have focused on the decision-maker's relation to the alleged discrimination or adverse employment action to determine whether direct evidence was provided. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (holding that direct evidence "must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism") (emphasis in original).

Additionally, in *Jones*, the Eleventh Circuit court noted that although there was evidence of past discriminatory comments, there was no evidence in the record that indicated that the personnel committee that investigated the plaintiff had a history of racial discrimination in its

decisions. 151 F.3d at 1323. In holding that an employee's discriminatory statements which were "remote from the main events" could not establish a prima facie case of discriminatory discipline, the court did not focus on the discriminatory statements by one coworker but rather the lack of evidence of discrimination from the decisionmakers. *Id*. Applying this analysis, the Court cannot conclude that the comments made by Mr. DiFiore – separated in time and context from Plaintiff's termination which was approved by multiple employees and departments, two years later – constitute direct evidence of age discrimination.

### C. Circumstantial Evidence and McDonnell Douglas

Because Plaintiff is not able to demonstrate discrimination through direct evidence, the Court will consider whether she has presented circumstantial evidence using the burden-shifting *McDonnell Douglas* framework.

As mentioned above, under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination, *Chapman*, 229 F.3d at 1024, which Plaintiff has established here. The parties do not dispute that Plaintiff was a member of the protected group of persons between the ages of forty and seventy, subjected to adverse employment action; and a substantially younger person filled the position that she sought or from which she was discharged, or that she was qualified to do the job for which she was rejected. *Kragor* F.3d at 1308. Additionally, the Eleventh Circuit has held that in cases in which an employee has enjoyed a long tenure at a particular job, a court can infer that he or she is qualified to hold that particular position. *Damon*, 196 F.3d at 1360.

Since Plaintiff has demonstrated a prima facie case of age discrimination, Defendant must articulate a legitimate, non-discriminatory reason for the challenged employment action. *See Chapman*, 229 F.3d at 1024. If Defendant articulates one or more such reasons, the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination.

*See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Kragor*, 702 F.3d at 1307 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

A plaintiff "will defeat summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A "triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.*

### i.     Bright House's Nondiscriminatory Reason for Plaintiff's Termination

After considering a plaintiff's evidence of discrimination, the defendants have "the exceedingly light burden of producing some legitimate, nondiscriminatory reason for their decision." *Crowley v. OSI Rest. Partners, LLC*, 907 F. Supp. 2d 1318, 1324 (M.D. Fla. 2012) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Because "the burden is one of production, not persuasion, the defendant meets its burden by presenting evidence that raises a genuine issue of fact as to whether the legitimate, non-discriminatory reason was the true reason for the adverse employment action." *Kragor*, 702 F.3d at 1308 (internal quotation marks omitted).

Bright House has presented evidence of its legitimate non-discriminatory reason for Plaintiff's termination—her creation of a hostile work environment and unprofessional behavior. In support, Bright House provided[7] feedback received from Plaintiff's coworkers regarding her workplace behavior. Specifically, Bright House pointed to an August 2015 report that Plaintiff

---

[7] Bright House also provided evidence of Plaintiff's prior performance reviews which demonstrate issues prior to Plaintiff's termination. (Doc. 18 at 3). However, the performance reviews, similar to the comments made by Mr. DiFiore, are too remote to be considered relevant. The performance reviews date back to 2007 through 2011, years before Plaintiff's termination in 2016. The Eleventh Circuit has held in a persuasive case that a district court did not abuse its discretion in excluding decade-old deposition testimony under Fed. R. Evid. 403. *Beckles v. Fed. Exp. Corp.*, 489 F. App'x 380, 384 (11th Cir. 2012). Additionally, Defendant failed to provide any performance reviews for the years leading up to Plaintiff's termination.

made people feel uncomfortable, that Plaintiff was difficult to work with, and that her coworkers felt that she targeted them.[8] (Doc. 18 at 5). When Plaintiff was informed of behavioral issues in the workplace, she demonstrated unprofessional behavior to the HR department. For example, Ms. Crutchfield noted that Plaintiff did not follow directions on how to handle employees that she was not directly managing or supervising. (Doc. 29-1 at 6). Specifically, Ms. Crutchfield believed that Plaintiff demonstrated unprofessional behavior by disagreeing with Bright House's goal of ensuring that all supervisors were aligned in how they manage and supervise employees. (Doc. 29-1 at 4).

Additionally, Bright House points to emails sent to supervisors regarding Plaintiff's attitude towards her coworkers. On January 26, 2016, shortly before Plaintiff's termination, one of Bright House's supervisors received an email that detailed an incident in which Plaintiff harassed and demeaned a coworker. (Doc. 19-8 at 3). The email stated that Plaintiff had spoken to another employee in a hostile manner and that she felt she was being "targeted, harassed and demeaned in the workplace." (*Id.*). Another email dated January 22, 2016 details an argument between Plaintiff and a coworker in which Plaintiff was speaking to the coworker "as if she was a little kid and [Plaintiff] was scolding her" and bullying of coworkers. (Doc. 19-9 at 2). When Plaintiff was informed of her coworker's allegations, her response was described as apathetic. Ms. Crutchfield noted that Plaintiff's general response was that Plaintiff believed it was "not her problem that someone felt uncomfortable with the way she was interacting and her responses." (Doc. 29-1 at 6). Importantly, Ms. Crutchfield noted that Plaintiff did not disagree that the hostile conversation occurred. (*Id.*).

---

[8] Plaintiff, of course, disagrees with the 2015 employee feedback that she was a bully and alleges that such feedback never even occurred. Plaintiff's only evidence to support these contentions is a simple denial in her deposition that she did not create a hostile work environment. (Doc. 19-1 at 32).

Shortly after speaking to Plaintiff about the allegations of her creation of a hostile work environment, Plaintiff was placed on a paid administrative leave while the HR department investigated the allegations in the emails. (Doc. 21-1 at 1). Ms. Crutchfield's uncontroverted declaration stated that she investigated the reports made by Plaintiff's fellow supervisors by interviewing the supervisors and confirming what had been reported regarding Plaintiff's workplace behavior. (*Id.*).

This evidence is sufficient to satisfy Defendant's exceedingly light burden of articulating a non-discriminatory reason for terminating Plaintiff. In response, Plaintiff argues that these reasons were pretextual.

ii.     *Pretext*

Once the employer produces evidence of a legitimate, non-discriminatory reason for the adverse action, the plaintiff may show that the employer's stated reason is actually a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L. Ed. 2d 207 (1981).

"In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). The plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext" in order to survive a motion for summary judgment. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). If the proffered reason is one that might motivate a reasonable employer, the plaintiff must "meet it head on and rebut it"

instead of merely quarreling with it. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004).

That said, "[w]hen a plaintiff chooses to attack the veracity of the employer's proffered reason, the inquiry is limited to whether the employer gave an honest explanation of its behavior." *Kragor*, 702 F.3d at 1310–11. An employer "may terminate an employee for a good or bad reason without violating federal law." *Damon*, 196 F.3d at 1361. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions," *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (internal quotation marks omitted), or question "whether employment decisions are prudent or fair." *Damon*, 196 F.3d at 1361. In the summary judgment context, the court considers a plaintiff's pretext explanation by conducting an inquiry to determine "whether a jury could reasonably infer discrimination if the facts presented . . . remain unrebutted." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). The "defendant is entitled to summary judgment if the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact as to each of the defendant's articulated reasons." *Chapman v. AI Transport*, 229 F.3d 1012, 1024–25 (11th Cir. 2000) (en banc).

For the foregoing reasons, Plaintiff has failed to carry her burden to show that Bright House's legitimate, non-discriminatory reasons for her termination were pretextual.

### a.  Mr. DiFiore's comments

Plaintiff argues that the discriminatory remarks made by Mr. DiFiore constitute evidence of pretext. In support, Plaintiff cites an Eleventh Circuit case which held that "language not amounting to direct evidence, but showing some [age-based] animus, may be significant evidence of pretext once a plaintiff has set out a prima facie case." *See Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998).

The Eleventh Circuit, however, has also held that "stray remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish pretext." *Ritchie v. Industrial Steel, Inc.*, 426 F. App'x 867, 873 (11th Cir. 2011) (internal quotation marks omitted) (citing *Damon*, 196 F.3d at 1362). That is because such stray comments are not sufficiently tied to the decision maker's state of mind at the time of the challenged employment decision to shed light on their thought processes surrounding the adverse employment decision. *Id.* at 872-873. Here, because Mr. DiFiore's comments were made outside the context of Plaintiff's termination and because there were numerous other decisionmakers who signed off on Plaintiff's termination, this argument does not sufficiently rebut Bright House's legitimate reasons for terminating Plaintiff. A reasonable jury could not conclude that based on Mr. DiFiore's comments, standing alone, Bright House created a pretextual version of events to terminate Plaintiff after receiving and investigating allegations of Plaintiff's workplace harassment.

b. *HR Investigation*

Plaintiff argues that the HR investigation did not meaningfully occurr because it was completed *after* Mr. DiFiore and Ms. Barrett signed off on a February 2, 2016, "Termination Request." [9] (Doc. 24-4). The Termination Request was actually a document entitled "Performance Issue Review" which showed Plaintiff's name, hire date, the date of the termination of employment request, her position, and the manager's and director's names. (Doc. 27-1 at 2). Plaintiff suggested that the February 2 date on the Termination Request is evidence that Bright House's reason for her termination is pretextual because it is the same date that she was placed on leave and the same date the investigation began. In support, Plaintiff points to Ms. Barrett's

---

[9] Both parties refer to this document as the "termination request." For the purposes of this Order, the document will be referred to as the "Termination Request."

deposition where she stated, without certainty, that she believed the February 2 date to be the date that Plaintiff's termination was "official."

Plaintiff, however, fails to include Ms. Barrett's other explanatory statements that the Termination Request would not be an automatic termination but would be considered the "recommendation to move forward with the termination . . . pending the outcome of the investigation and all the work that's done on the back end." (Doc. 28-1 at 16). Ms. Barrett also stated that the "recommendation for termination is a process" which started the investigation but did not always lead to a termination. (Id. at 17). HR Manager Ms. Crutchfield also detailed the investigation process and noted that when Plaintiff was put on administrative leave after the supervisors received emails from coworkers regarding Plaintiff's behavior, an investigation began *after* Plaintiff was told of the allegations and had an opportunity to respond. Further, Ms. Crutchfield's declaration stated that she investigated the January 2016 emails sent by Plaintiff's coworkers to confirm the statements regarding Plaintiff's behavior at work.

Without making credibility determinations or weighing conflicting evidence, the Court must draw all justifiable inferences in Plaintiff's favor. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999). Plaintiff's argument that no real HR investigation occurred, however, is not supported by the uncontroverted evidence. Ms. Barrett explained the process by which Bright House's legal and HR department conducted the potential termination in this case and noted that the date on the Termination Request, standing alone, was not dispositive of whether or not there was in fact an investigation. This evidence sufficiently rebuts Plaintiff's accusation that no such investigation took place. Thus, Plaintiff has failed to create a triable issue of fact that Bright House's HR investigation was pretext for a discriminatory termination.

Plaintiff also argues that if a meaningful investigation leading to her termination did occur, it was flawed and unfair and is therefore pretextual. In support, Plaintiff cites Bright House's

complaint procedure which states that to conduct a proper investigation of an employee's complaint, the employee's coworkers, supervisors, or others may be contacted and questioned. Plaintiff claims that Mr. DiFiore made the decision to terminate Plaintiff without contacting or questioning coworkers who initiated the issue and this demonstrates pretext. Plaintiff's argument is again based on the February 2, 2016 date on the Termination Request wherein Mr. DiFiore and Ms. Barrett signed off on the performance issue review. Plaintiff argues that because the Termination Request was filled out on the same date that she was put on leave and before any of her coworker's allegations were investigated and confirmed, her removal from the workplace is evidence of pretext.

Plaintiff cites a Seventh Circuit Title VII and § 1981 case for the proposition that an unfair or flawed investigation can be the basis of a pretext argument based on a plaintiff's ability to demonstrate implausibility or inconsistency in the employer's proffered legitimate reasons for its actions. In *Humphries v. CBOCS West, Inc.*, the court noted that the employer-defendant did not investigate the veracity of allegations of the plaintiff's poor work performance. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007), *aff'd*, 553 U.S. 442, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008). The court found that the quality of the investigation may have had "some bearing on the truthfulness of [the defendant employer's] proffered reasons for terminating [the plaintiff]" which were issues that the jury should sort out. *Id*. The court went on to say, however, that "merely pointing to an employer's shoddy investigatory efforts" is not "sufficient to establish pretext. Erroneous (but believed) reasons for terminating an employee are not tantamount to pretextual reasons." *Id*.

Plaintiff's quarrels with Bright House's investigation, however, are not sufficient to show pretext. The Eleventh Circuit has found a triable issue of fact regarding pretext where the decisionmaker did not conduct an independent investigation but rather rubberstamped the decision

to terminate based on a supervisor's age-based animus. In *Godwin v. WellStar Health System, Inc.*, the plaintiff was similarly terminated without any written discipline under the employer defendant's progressive discipline plan after a supervisor made several discriminatory remarks, including asking plaintiff why she was still working at that age and saying that he was going to put plaintiff "out to pasture." 615 F. App'x 518, 524 (11th Cir. 2015). The plaintiff was able to present evidence of at least one other employee who thought that the supervisor was trying to get rid of her because of her age. *Id*. at 530. Based on this evidence, the court found that there were genuine issues of material fact as to whether the investigation was tainted by the ageist supervisor. *Id*. The evidence suggested that the supervisor chose specific faulty purchase orders from the plaintiff's file for the decision-maker to review. *Id*. Importantly, the decision-maker stated that he "did not conduct an independent investigation to verify the completeness or accuracy of the information" the ageist supervisor gave him and, as a result, the court noted that a jury could find that he likely made the decision to terminate the plaintiff based on the supervisor's bias. *Id*. Plaintiff also relied on *Godwin* in arguing that Bright House is vicariously liable for Mr. DiFiore's discriminatory animus, regardless of whether he was the final decisionmaker based on the investigation. *Id*. In *Godwin*, the Eleventh Circuit reviewed the "cat's paw" doctrine and held that under certain circumstances, a plaintiff may establish but-for causation if she shows that the unbiased decision-maker . . . followed a biased recommendation without independently investigating the complaint against the employee. *Id*. at 528.

The investigation here, however, cannot be said to be dependent on Mr. DiFiore's recommendation. There is no evidence in the record to suggest that the emails from Plaintiff's coworkers detailing Plaintiff's harassment were at all motivated by Mr. DiFiore's alleged age discrimination. Plaintiff did not present any evidence that Mr. DiFiore tainted the HR investigation or that the investigation was improperly influenced by his discriminatory view. Unlike the *Godwin*

case wherein there was evidence that the ageist supervisor directly and purposefully provided skewed information to the decisionmaker, Mr. DiFiore was just one piece of the puzzle of Plaintiff's termination. As Plaintiff points out, Mr. DiFiore signed off on the Termination Request, but Ms. Barrett's deposition testimony explained that the investigation and termination process was a group decision engaging HR and the legal department – neither of which were alleged to be discriminatory.

At the summary judgment stage, a district court should consider all reasonable inferences that can be drawn in the favor of the party opposing summary judgment. *Kragor*, 702 F.2d at 1311. But Plaintiff's allegation that no independent investigation occurred, based on nothing more than mere speculation, as compared to evidence of Bright House's HR team, would not be a reasonable inference for the Court to draw. Thus, Plaintiff has failed to present sufficient evidence to permit a jury to discredit Bright House's investigation and justifications for termination or otherwise conclude that the investigation was pretext for discrimination. *See Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 967 (11th Cir. 2012).

### c. Shifting reasons for termination

Plaintiff alleges that Bright House's shifting reasons for her termination provide evidence sufficient to demonstrate pretext. A plaintiff may demonstrate pretext by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder" could not accept them. *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). Shifting reasons are also a legitimate method of establishing pretext. *See Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998). To be considered evidence of pretext, the reasons should generally be inconsistent. *Id*. The mere fact that

an employer offers an additional reason for the employment decision does not suggest pretext if both reasons are consistent. *Id.*

Plaintiff argues that Bright House's reasoning for her termination, that she created a hostile work environment, is not worthy of credence based on how Bright House relayed the information of Plaintiff's administrative leave and termination. Plaintiff also alleges in this portion of her argument that she was not told why she was being terminated and that she also denies having created a hostile work environment.

Bright House has not provided more than one reason for terminating Plaintiff's employment. Bright House has made clear that its reasoning is based on numerous coworkers' reports of Plaintiff's inappropriate work behavior. In *Ritchie v. Industrial Steel, Inc.*, where the employer first cited a specific altercation as reason for termination but later claimed performance issues, the court did not find that Plaintiff had established pretext by means of an employer's shifting reasons for termination. 426 F. App'x 867, 873 (11th Cir. 2011). Similarly, Plaintiff has failed to establish pretext under this argument. The uncontroverted evidence shows that Bright House conducted an investigation and interviewed Plaintiff's coworkers. Bright House's reasons are consistent and not sufficiently rebutted by Plaintiff to point to pretext.

#### d. *Deviation from discipline policy*

Lastly, Plaintiff points to Bright House's deviation from its progressive discipline policy as evidence of pretext. A "plaintiff can show pretext by demonstrating that the employer did not follow its normal procedures in terminating his employment" because such departures may be suggestive of discrimination. *Ritchie*, 426 F. App'x 867, 873 (citing *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985)). Plaintiff argues that Bright House intentionally veered from normal procedures regarding its progressive disciplinary policy by submitting the Termination Request before Plaintiff received any formal discipline. Plaintiff argues that Bright House's deviation based

on the words of another employee presents an issue of fact that should preclude summary judgment. Plaintiff points to Ms. Barrett's deposition where she stated that Bright House's progressive disciplinary policy would provide for a verbal warning, then a written warning, and a final written warning before termination. (Doc. 28-1 at 5). Ms. Barrett also stated, however, that the deviation from the progressive disciplinary policy would occur in situations when the company had decided that a particular behavior or action was egregious or in a "zero tolerance" scenario. (*Id*. at 6). Ms. Barrett claimed that anything resulting in the abuse of a customer, abuse of a coworker, harassment, or creation of a hostile work environment could be considered egregious enough to terminate an employee without HR having previously taken disciplinary action. (*Id*.).

"If management has discretion as to whether to follow the discipline policy, then failure to follow the policy does not show pretext." *Id*. at 873 (citing *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). In *Ritchie*, as here, the plaintiff was unable to establish pretext because the company provided testimony that they did not comply with the progressive discipline policy in every case. *Id*. at 874. Thus, Plaintiff has failed to create a triable issue of fact as to whether Bright House's legitimate non-discriminatory reason for terminating Plaintiff is pretextual.

## IV.    CONCLUSION

Plaintiff failed to create a genuine issue for trial that is sufficient for a jury to return a verdict that Bright House terminated her employment because of her age. While Plaintiff was able to establish a prima facie case of age discrimination under *McDonnell Douglas*, Bright House gave a legitimate and non-discriminatory reason for her termination that Plaintiff failed to rebut through evidence of pretext.

Based on the foregoing, it is ordered as follows:

1.      Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED.**

2.     The Clerk shall enter a judgment providing that the Plaintiff, Jacqueline McCall, shall take nothing on her claims against the Defendant, Bright House Networks.

3.     All other pending motions are **DENIED** as MOOT.

4.     The Clerk is **DIRECTED** to close this file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on January 7, 2020.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record